LUIS A. CARRILLO, SBN, ESQ., 70398
MICHAEL S. CARRILLO, ESQ, SBN 258878
MARIA F. GARCIA BALDIZZONE, ESQ., SBN 367907
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
T: (626) 799-9375/F: (626) 799-9380

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SHANNON RINCON, S.O, a minor, by and through his Guardian Ad Litem, SHANNON RINCON**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**COUNTY OF LOS ANGELES, THOMAS GIANDOMENICO, ROBERT LUNA and DOES 1 through 20, inclusive,**<br><br>**Defendants.** | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR:**<br>**1. VIOLATION OF THE FOURTEENTH AMENDMENT - RE PRIVACY AND FAMILY INTEGRITY**<br>**2. MUNICIPAL LIABILITY – FAILURE TO TRAIN (42 U.S.C. § 1983, *MONELL*)**<br>**3. NEGLIGENCE**<br>**4. INVASION OF PRIVACY**<br>**5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**[DEMAND FOR JURY TRIAL]** |

**COMES NOW**, Plaintiffs SHANNON RINCON and S.O. a minor, by and through his Guardian Ad Litem, SHANNON RINCON, alleges as follows:

## I.

## VENUE AND JURISDICTION

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## II.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. On or about June 5, 2026, Plaintiff S.O. presented a written claim for money damages to the COUNTY OF LOS ANGELES arising from the wrongful taking, possession, viewing, display, transmission, sharing, and dissemination of death-scene, postmortem, and remains photographs of WILLIAM OSBORN. COUNTY OF LOS ANGELES rejected this claim on June 11, 2026, stating it was a late claim. Due to an error concerning the identification of the counsel authorized to represent S.O., two claims concerning the same wrongful conduct were presented on S.O.'s behalf. On June 11, 2026, the COUNTY OF LOS ANGELES rejected as untimely the first claim, which had been presented by counsel who was not authorized to represent S.O.

4. On or about July 6, 2026, Plaintiff SHANNON RINCON presented a written claim for money damages to the COUNTY OF LOS ANGELES arising from the wrongful taking, possession, viewing, display, transmission, sharing, and dissemination of death-scene, postmortem, and remains photographs of WILLIAM OSBORN. COUNTY OF LOS ANGELES rejected this claim on July 13, 2026, stating it was a late

claim.

5. Plaintiffs' claim was timely presented. The wrongful conduct and resulting injury were not discovered, and could not reasonably have been discovered, until on or about March 26, 2026. The events giving rise to these claims occurred after the death of Decedent WILLIAM OSBORN and are separate and distinct from the workplace incident that caused his death. The facts concerning who took, possessed, viewed, shared, distributed, or disseminated the photographs were uniquely within the possession, custody, control, and knowledge of the COUNTY OF LOS ANGELES. Although Plaintiff SHANNON RINCON is a deputy within the Los Angeles Sheriff's Department, she was not assigned to and was not part of the investigation, and she was not made aware of the wrongful dissemination until on or about March 26, 2026, when the Los Angeles Times published an article reporting that the Los Angeles Sheriff's Department was conducting an internal criminal investigation into whether graphic photographs of the deceased detectives had been improperly taken and shared and that Commander THOMAS GIANDOMENICO had been relieved of duty in connection with that investigation.. Plaintiffs' claim was therefore presented within six months of their discovery of the wrongful conduct and resulting injury.

## III.

## INTRODUCTION

6. This action arises from the wrongful taking, possession, viewing, display, transmission, sharing, and dissemination of graphic death-scene, postmortem, and remains photographs of Deputy WILLIAM OSBORN ("Decedent") by Los Angeles Sheriff's Department personnel following his death in the line of duty. Plaintiffs are WILLIAM OSBORN's surviving spouse and surviving minor child. They do not sue here for the circumstances of WILLIAM OSBORN's death. They sue for a separate and distinct wrong: the exploitation of images of his remains by the very law-enforcement agency entrusted with securing the scene, protecting the evidence, and preserving the dignity of the deceased and his family.

7. On July 18, 2025, WILLIAM OSBORN was killed when an explosive device detonated during a law-enforcement disposal or handling process. He was one of three Los Angeles Sheriff's Department deputies killed in that single incident. WILLIAM OSBORN was a 33-year veteran of the Los Angeles Sheriff's Department and served under Employee No. 461983. He began his career with the Department in 1992 and served in numerous assignments before joining the Arson and Explosives Detail within the Special Enforcement Bureau in 2019. At the time of his death, Decedent had served with the Arson and Explosives Detail for approximately six years and was one of the Department's most experienced bomb technicians.

8. Rather than treat the death scene with the dignity the law requires, a high-ranking Los Angeles Sheriff's Department command officer, Commander THOMAS GIANDOMENICO, took unauthorized, non-investigative photographs of the deceased with his personal cell phone and thereafter kept and shared those images for purposes wholly unrelated to any legitimate law-enforcement function.

9. Plaintiffs were not told at the time of WILLIAM OSBORN's death, or when an internal investigation into the photographs began, that images of his remains had been wrongfully taken and disseminated. They first learned of, and could first reasonably have suspected, the wrongful conduct on or about March 26, 2026, when the Los Angeles Times publicly reported an ongoing internal criminal investigation into whether graphic photographs from the blast had been improperly shared.[1]

10. This conduct did not occur in a vacuum. The COUNTY OF LOS ANGELES had already been sued, subjected to a substantial federal jury verdict, and placed on notice by legislative action following the widely publicized scandal in which Los Angeles Sheriff's Department personnel took and shared unauthorized photographs of the remains of Kobe Bryant, his daughter Gianna Bryant, and others killed in a 2020 helicopter crash. In

[1] Richard Winton & Salvador Hernandez, *L.A. Sheriff Investigates Whether Photos of 3 Deputies Killed by Grenade Were Improperly Shared*, L.A. Times (Mar. 26, 2026).

response to that misconduct, the California Legislature enacted Assembly Bill No. 2655, commonly known as the "Kobe Bryant Act," which added Penal Code section 647.9 and made it a crime for a first responder to photograph a deceased person for any purpose other than an official law-enforcement purpose. Thereafter, on August 24, 2022, a federal jury found the COUNTY OF LOS ANGELES liable for violating the constitutional privacy rights of Vanessa Bryant and co-plaintiff Christopher Chester and returned a combined verdict of $31 million in damages. Thus, well before the misconduct alleged here, the COUNTY OF LOS ANGELES was on unmistakable notice that law-enforcement and first-responder personnel had taken and shared unauthorized death images; that such conduct inflicted severe emotional harm on surviving family members and violated their privacy rights; and that meaningful policies, training, supervision, investigation, and discipline were necessary to prevent its recurrence. Despite that notice, Defendants failed to take adequate corrective measures, and Plaintiffs were injured as a result.[2]

## IV.

## PARTIES

11. Plaintiff SHANNON RINCON is an individual residing in the County of Los Angeles and is the surviving spouse of Decedent and the biological mother of Plaintiff S.O. Plaintiff SHANNON RINCON sues in her individual capacity as the wife of Decedent.

12. Plaintiff S.O. is an individual residing in the County of Los Angeles and is the natural/biological son of Decedent. Plaintiff, S.O. sues in his individual capacity as the son of Decedent. Plaintiff is the minor son of Decedent and, to protect his privacy as a minor, is identified herein by the pseudonym S.O.

13. WILLIAM OSBORN ("Decedent"), served with the Los Angeles County Sheriff's Department for 33 years. At the time of his death on July 18, 2025, Decedent

[2] *Vanessa Bryant v. County of Los Angeles; Los Angeles County Sheriff's Department; Alex Villanueva; et. al.*, Sup. Court of Los Angeles, Case No. 20SCV358849).

was a sworn member of the Department (Employee No. 461983), assigned to the Arson and Explosives Detail within the Special Enforcement Bureau died on July 18, 2025. At the time of his death, Decedent was a detective employed by the Los Angeles County Sheriff's Department.

14. Defendant COUNTY OF LOS ANGELES ("COUNTY") is a municipal corporation duly authorized to operate under the laws of the State of California. Los Angeles Sheriff's Department ("LASD") is a local government entity created under the laws of the State of California and is a department of Defendant COUNTY. The LASD provides general law enforcement services to the COUNTY and certain cities. The LASD's work is directed by, among others, Sheriff ROBERT LUNA.

15. Pursuant to California Government Code§ 815.2(a) Defendants COUNTY and the LASD are liable for any and all wrongful acts in violation of state law hereinafter complained of and committed by their employees acting within the course and scope of their employment.

16. Defendant ROBERT LUNA ("LUNA") is an individual and was, and is, at all times relevant herein, the Sheriff of COUNTY. He is an elected official of the COUNTY with responsibility for overseeing the LASD and making and implementing its policies. Sheriff LUNA's edicts and acts may fairly be said to represent official policy of the LASD. Sheriff LUNA is sued in his individual capacity and in his official capacity as a representative of the County. On information and belief, Sheriff LUNA resides in the County of Los Angeles.

17. Defendant THOMAS GIANDOMENICO ("GIANDOMENICO") is an individual and was, at all relevant times, a Commander with the LASD. GIANDOMENICO is sued in his individual capacity and in his official capacity as a representative of the COUNTY. On information and belief, Commander GIANDOMENICO resides in the County of Los Angeles.

18. Plaintiffs are informed and believe, and thereon allege, that Defendants DOES 1 through 20, inclusive, include current and former officers, deputies, commanders,

supervisors, policymakers, employees, agents, and representatives of the COUNTY OF LOS ANGELES who accessed, obtained, copied, downloaded, retained, transmitted, displayed, distributed, shared, or otherwise disseminated the subject photographs. DOES 1 through 20 also include supervisory and command personnel who directed, authorized, approved, facilitated, knowingly permitted, or ratified such conduct; knew or reasonably should have known that the photographs had been or were being improperly disseminated and failed to prevent or stop it; failed to properly train, supervise, investigate, or discipline the responsible personnel; and/or participated in or approved efforts to conceal the unauthorized dissemination. At all relevant times, each DOE Defendant acted under color of law and within the course and scope of their employment, agency, or authority.

19. The true names and capacities, whether individual, corporate, associate, public, or otherwise, of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names pursuant to Code of Civil Procedure section 474. Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each fictitiously named Defendant is responsible in some manner for the occurrences alleged herein and that Plaintiffs' injuries and damages were proximately caused by their conduct.

20. Plaintiffs are informed and believe, and thereon allege, that at all relevant times each Defendant was the agent, servant, employee, co-venturer, and/or representative of each of the remaining Defendants and, in doing the things alleged herein, was acting within the course and scope of that agency, employment, or venture, and with the knowledge, consent, and ratification of each of the remaining Defendants.

21. At all relevant times, each individual employee whose conduct is alleged herein was acting within the course and scope of his or her employment with Defendant COUNTY OF LOS ANGELES. Each such public entity Defendant is liable for the acts and omissions of its employees within the scope of their employment pursuant to Government Code section 815.2.

## V.

## FACTUAL ALLEGATIONS

22. On July 18, 2025, WILLIAM OSBORN, a Deputy assigned to the LASD's Special Enforcement Bureau/Arson Explosives Detail, was killed when an explosive device detonated during a law-enforcement-related disposal or handling process. He was one of three LASD deputies who died in that single incident. The other two deputies were Victor Lemus and Joshua Kelley-Eklund.

23. Following the deaths, and based on information and belief, the COUNTY, by and through the Los Angeles Sheriff's Department, was assigned to investigate the facts and circumstances surrounding the incident. In carrying out that investigation, Sheriff's Department personnel responded to and processed the scene, documented and collected evidence, and thereby obtained access to and control over the death scene, the remains of the deceased deputies, and related photographs, digital evidence, and investigative materials.Commander GIANDOMENICO responded to the scene of the July 18, 2025, explosion. On information and belief, while at the scene, an area to which public access was prohibited and to which only law-enforcement and emergency-medical personnel were permitted, GIANDOMENICO removed his personal cell phone, pointed it toward the deceased, and took multiple unauthorized, unofficial, non-investigative photographs of the remains.

24. On information and belief, and as publicly reported, GIANDOMENICO remarked words to the effect of "This is going to be a good picture" as he prepared to photograph the deceased, and a witness cautioned him to show respect for the dead. Undeterred, GIANDOMENICO took the photographs, kept them, and later shared them with others.

25. On information and belief, the photographs GIANDOMENICO and other LASD personnel took, possessed, viewed, displayed, transmitted, shared, distributed, or discussed included graphic images depicting the remains, fatal injuries, and death scene of WILLIAM OSBORN.

26. The photographs were not taken, kept, shared, displayed, or discussed for any legitimate law-enforcement, evidentiary, investigative, medical-examiner, or other official or public purpose. They were taken, kept, and disseminated without the consent of Plaintiffs and without any legitimate purpose related to the investigation of the deputies' deaths.

27. On information and belief, and as publicly reported by the Los Angeles Times on or about March 26, 2026, the LASD was conducting an internal criminal investigation into whether graphic crime-scene photographs from the blast that killed Deputies Victor Lemus, Joshua Kelley-Eklund, and WILLIAM OSBORN were improperly shared. On information and belief, the investigation had been ongoing for approximately six months, having been launched on or about September 11, 2025.

28. On information and belief, a high-ranking LASD official with nearly forty years in the Department was relieved of duty in connection with the investigation on or about September 11, 2025.

29. On information and belief, other news outlets also published articles related to the unauthorized photographs.

30. By taking and sharing the photos, GIANDOMENICO violated the respect owed to the dead and the privacy of the bereaved by collecting trophies in the form of death images of the victims' remains. Such conduct is so reprehensible and unconscionable that it cannot be dismissed as a mere slip-up or technical infraction.

31. Upon learning that the photos had been taken, Sheriff LUNA failed to confiscate the phone and LASD attempted to conceal from Plaintiffs that unauthorized photos existed.

32. Plaintiffs were not informed by the COUNTY or the LASD, at or near the time of WILLIAM OSBORN's death, when the internal investigation began, or at any time before the Los Angeles Times report , that photographs depicting his remains, fatal injuries, death scene, or postmortem condition had been wrongfully taken, accessed, viewed, shared, distributed, or disseminated. Plaintiffs first learned of, and first

reasonably suspected, the wrongful dissemination on or about March 26, 2026.

33. The COUNTY and the LASD were already on actual and constructive notice of the severe harm caused by the unauthorized taking, viewing, sharing, and dissemination of death-scene photographs by law-enforcement personnel. In September 2020, Vanessa Bryant initiated litigation against the COUNTY and the LASD after learning that LASD personnel had taken and shared photographs of the remains of Kobe Bryant, his daughter, and others killed in a helicopter crash. That litigation detailed a long-standing custom among LASD members of taking photographs at crime and accident scenes for personal, non-official use, and it described the absence of an adequate formal policy, the lack of training, and deliberate indifference to the privacy interests of the family members of deceased victims.[3] On August 24, 2022, a federal jury found the COUNTY liable for violating the constitutional rights of Vanessa Bryant and co-plaintiff Christopher Chester and returned a combined verdict of $31 million in damages.

34. In direct response to that misconduct, the California Legislature enacted *Penal Code§* 647.9, commonly known as the "Kobe Bryant Act", prohibiting law-enforcement and other first-responder personnel from capturing photographic images of a deceased person for any purpose other than an official law-enforcement purpose. The Legislature enacted Penal Code section 647.9 after learning that first responders, who obtained extraordinary access to the crash scene solely by virtue of their public employment, had taken or obtained gruesome photographs for personal rather than investigative purposes and had displayed those photographs to members of the public. The Assembly Committee on Public Safety recognized that first responders possess special access to accident and death scenes because of the authority entrusted to them and that using that

---

[3] *Vanessa Bryant v. County of Los Angeles; Los Angeles County Sheriff's Department; Alex Villanueva; et. al.*, Sup. Court of Los Angeles, Case No. 20SCV35884 9 Sept 17, 2020).

[4] Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2655 (2019–2020 Reg. Sess.)

access to obtain photographs for personal purposes exceeds the legitimate scope of their duties.[4]

35. The legislative history expressly states that Assembly Bill 2655 was intended to penalize conduct by public officials that breaches the public's trust through the use of their unique access and governmental authority to document tragic events for personal fulfillment or promotion. The Legislature further recognized that such conduct invades the privacy of grieving families, disregards the dignity of the deceased, and exposes affected families to renewed trauma and emotional harm.[5]

36. The Legislature considered the misconduct sufficiently serious that it did not leave enforcement solely to internal departmental policies or discipline. Instead, it made the unauthorized taking of such photographs a misdemeanor, required every agency employing first responders to notify its personnel of the statutory prohibition, and amended Penal Code section 1524 to authorize search warrants for evidence that a first responder violated section 647.9.[6]

37. Through these measures, the Legislature placed every California law-enforcement agency and first responder on express notice that access to the remains of a deceased person is a public trust, not a personal privilege, and that exploiting such access to obtain death images for personal or unofficial purposes constitutes criminal conduct that threatens the dignity of the deceased, the privacy of surviving family members, and public confidence in first responders.

38. Despite this exposure, the resulting legislation, and public commitments by LASD leadership to hold personnel accountable, the COUNTY failed to implement and enforce adequate policies, training, supervision, and discipline to prevent the same misconduct from occurring again. That a high-ranking commander felt free to take such photographs openly, at a highly publicized scene, and then to keep and share them,

---

[5] *Id.*
[6] *Id.*

demonstrates the COUNTY's continuing deliberate indifference to the constitutional and common-law rights of surviving family members.

39. In 2022, while campaigning for the office of Los Angeles Sheriff, ROBERT LUNA publicly acknowledged that the taking of photographs at the helicopter crash by COUNTY's employees were "not acceptable under any circumstances" and demanded that the culpable parties be held accountable and disciplined for their actions.

40. The COUNTY, and LUNA thus had specific warning between September 2020 when Vanessa Bryant initiated her litigation and July 2025 when the grenade exploded and killed WILLIAM OSBORN and two other deputies that meaningful changes needed to be made to this rogue culture.

41. Despite the exposure, resulting legislation, and LUNA's demands to hold personnel accountable, the COUNTY, and Luna have allowed this custom to continue.

42. In the five years since Vanessa Bryant initiated her lawsuit, the COUNTY, and LUNA failed to adequately end the horrific and unlawful custom whereby employees take unauthorized, unofficial, non-investigative photographs of crime and accident scenes, even when it involves personnel from COUNTY.

43. The unwritten custom and practice of taking such photographs and committing such an obvious constitutional violation demonstrates, at a minimum, deliberate indifference to protecting civil rights. The inability to take reasonable steps to refrain from and prevent personnel from engaging in the very conduct for which they were previously sued created a harm that cannot be undone.

44. The repugnant nature of these actions is so shocking to the conscience, offensive to the community's sense of decency, and wholly inconsistent with constitutional rights that it would, by itself, trigger liability. That COUNTY, and LUNA failed to implement meaningful changes after previously being put on notice by the *Bryant* lawsuit and consequent legislative action further amplifies their culpability.

45. Sheriff LUNA, acting in his official capacity, and whose edicts and acts may

fairly be said to represent official policy, failed to prevent the harm the Plaintiffs have, and will continue to suffer, by allowing his executive to take and distribute photos that posed a high probability of causing harm.

46. First, on information and belief, LUNA promoted GIANDOMENICO.

47. Second, after learning that the photographs had been taken, Sheriff LUNA failed to confiscate the phone and determine where the images had been sent, thus allowing further circulation.

48. Third, LUNA failed to implement adequate-and perhaps no-training for an issue he described as unacceptable and deserving of accountability while running for the office of LASD. To Plaintiffs belief and knowledge, COUNTY did not implement any formal training related to photographing crime and accident scenes for non-investigative purposes even after LASD had undergone a costly, embarrassing, and newsworthy lawsuit.

49. Sheriff LUNA criticized the former Sheriff for problems arising out of the *Bryant* case but failed to correct them after being elected. The failure of the COUNTY, and LUNA to learn from the *Bryant* matter demonstrate a lawsuit and legislation did not compel correction to an unlawful customary practice.

50. Indeed, Sheriff LUNA compounded the problem. He should have prevented the photos from being taken and expeditiously alerted family members that these photos were possibly circulating. Especially when Plaintiff herself, SHANNON RINCON, is a sworn deputy in the department. His failure in that regard has devastated multiple families, including most relevantly, Plaintiffs SHANNON RINCON and S.O. who are still grieving the loss of WILLIAM OSBORN and now were retraumatized to learn that these photos had been taken and shared.

51. As a direct and proximate result of the wrongful taking, possession, viewing, display, transmission, sharing, and dissemination of death images of WILLIAM OSBORN, Plaintiffs have suffered and continue to suffer serious and severe emotional distress, mental anguish, grief, humiliation, anxiety, depression, fear of further

dissemination, loss of peace of mind, invasion of privacy, and other damages, in amounts to be proven at trial.

**VI.**

**<u>FIRST CAUSE OF ACTION</u>**

**VIOLATION OF THE FOURTEENTH AMENDMENT - RE PRIVACY AND FAMILY INTEGRITY (42 U.S.C. § 1983)**

**By Plaintiffs Against Defendants GIANDOMENICO and LUNA**

52. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

53. The Fourteenth Amendment to the United States Constitution guarantees substantive due process rights, including the right to privacy and family integrity. The United States Court of Appeals for the Ninth Circuit has recognized that surviving family members have a Fourteenth Amendment substantive due process right to control the public dissemination of death images of a close family member. *Marsh v. County of San Diego* (9th Cir. 2012) 680 F.3d 1148, 1154.

54. Plaintiffs, as the surviving spouse and surviving minor child of WILLIAM OSBORN, each had and have a constitutionally protected right to privacy and family integrity, including the right to control the physical remains, memory, and death images of their deceased husband and father.

55. Defendant GIANDOMENICO acted under color of state law. He took the photographs while on duty, in his capacity as a Commander of the LASD, and in an area to which public access was prohibited and to which only law-enforcement and emergency-medical personnel were permitted. He thereafter possessed and shared the photographs while on duty or otherwise by virtue of, and in connection with, his employment with COUNTY.

56. By taking photographs of WILLIAM OSBORN's remains for personal, non-law-enforcement purposes, and by keeping and sharing those photographs, GIANDOMENICO deprived, and continues to deprive, Plaintiffs of their Fourteenth

Amendment right to privacy and family integrity, including their right to control the physical remains, memory, and death images of their deceased husband and father.

57. GIANDOMENICO knew or should have known that taking, sharing, and/ or distributing the photos of WILLIAM OSBORN's remains for personal, non-law enforcement purposes violated the law.

58. As a direct and proximate result of GIANDOMENICO 's conduct, Plaintiffs have suffered and continue to suffer serious and severe emotional distress and other damages in an amount to be proven at trial.

59. Sheriff LUNA should have prevented the photos from being taken and expeditiously alerted family members that these photos were possibly circulating. His failure in that regard has devastated multiple families, including most relevantly, Plaintiffs.

60. Upon learning that the photographs had been taken, Sheriff LUNA failed to confiscate GIANDOMENICO 's phone and determine where the images had been sent, thus allowing further circulation.

61. Plaintiffs have, and continue to suffer, serious and severe emotional distress as a direct and proximate result of the knowledge that these photos were taken, consumed, shared, and/ or distributed to others.

62. GIANDOMENICO's conduct was malicious, oppressive, and in reckless and callous disregard of Plaintiffs' federally protected rights, entitling Plaintiffs to punitive damages against him in his individual capacity in an amount sufficient to punish him and deter others.

63. GIANDOMENICO and LUNA are jointly and severally liable for any and all damages Plaintiffs have incurred due to the actions described above.

64. As a result of the tortious conduct as alleged herein against Defendants LUNA and GIANDOMENICO, Plaintiffs request an award of reasonable attorneys' fees and the costs expended as necessary to bring these claims forth on her behalf, pursuant, without limitation, to the Civil Rights Act of 1871, 42 U.S.C. §1983.

## VII.

## SECOND CAUSE OF ACTION

## MUNICIPAL LIABILITY – FAILURE TO TRAIN (42 U.S.C. § 1983, MONELL)

**By Plaintiffs Against Defendants COUNTY, LASD, LUNA, and DOES 1 through 20**

65. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

66. Pursuant to 42 U.S.C. section 1983, a public entity is liable for constitutional violations when the execution of its official policy or custom deprives a person of constitutional rights, or when its failure to adopt adequate procedures to train, supervise, or discipline its employees amounts to deliberate indifference to the rights of persons with whom its employees come into contact. *Monell v. New York City Dept. of Social Servs.*, supra, 436 U.S. at pp. 690–691, 694.

67. At all relevant times, COUNTY, and their agents, including LUNA, acted under color of state law.

68. GIANDOMENICO's taking of unauthorized death photographs was not an isolated event but a continuation of a long-standing pattern, practice, and custom within the LASD of taking and sharing unauthorized, unofficial, non-investigative photographs at death and accident scenes for personal use.

69. The COUNTY and their agents, including LUNA, had actual and constructive notice of a long- standing custom of responding officials taking unauthorized photos at death investigations that would likely result in violations of community members' constitutional rights as evidenced by the detailed long-standing tradition of taking such photos discussed in the *Bryant* litigation, and the *Bryant* litigation itself.

70. The litigation brought against the COUNTY by Vanessa Bryant revealed a long-standing custom by members of LASD of taking photographs at crime and accident scenes for personal use. It further described the absence of a formal policy, lack of training, and deliberate indifference to constitutional rights as they relate to the privacy

interests of family members of deceased victims.

71. The State of California enacted Penal Code § 647.9, also known as the "Kobe Bryant Act" in direct response to the misconduct of COUNTY personnel. The legislation prohibits law enforcement officials from capturing the photographic images of a deceased person for reasons other than an official law enforcement purpose.

72. Sheriff LUNA made specific and direct comments calling for accountability of those personnel who took the photographs at the scene of the crash that killed Kobe Bryant and others, declaring the actions "not acceptable under any circumstances."

73. The COUNTY, and their agents, including LUNA, thus had specific warning between September 2020 when Vanessa Bryant initiated her litigation and July 2025 when the grenade exploded killing WILLIAM OSBORN that meaningful changes needed to be made to this rogue culture that allowed the photographing of death images for non-investigative purposes.

74. In the five years since Vanessa Bryant initiated her lawsuit, the COUNTY, and LUNA failed to adequately end the horrific and unlawful custom whereby employees take unauthorized, unofficial, non-investigative photographs of crime and accident scenes, even when it involves personnel from LASD.

75. Based on the facts set forth above, the COUNTY, and their agents, including LUNA, were on actual and/or constructive notice of the need to train and discipline employees and to supervise death scenes so as to avoid the taking of unauthorized photographs, and that the failure to do so would likely result in violations of community members' constitutional rights.

76. Despite the exposure, resulting legislation, and LUNA's demands to hold personnel accountable, the COUNTY, and their agents, including LUNA, allowed this custom to continue. The COUNTY, and their agents, including LUNA, were deliberately indifferent to the substantial risk that their policies, procedures, practices, customs, and/or failure to train, supervise, and/ or discipline were inadequate to prevent violations of law and/ or constitutional violations.

77. COUNTY failed to implement adequate-and perhaps no-training for an issue LUNA described as unacceptable and deserving of accountability while running for the office of LASD. To Plaintiffs' belief and knowledge, COUNTY did not implement any formal training related to prohibitions against photographing crime and accident scenes for non-investigative purposes even after COUNTY underwent a costly, embarrassing, and newsworthy lawsuit. The failure of COUNTY, and their agents, including LUNA, to learn from the *Bryant* matter demonstrate a lawsuit and legislation did not compel correction to an unlawful customary practice.

78. To Plaintiffs' belief and knowledge, LUNA promoted GIANDOMENICO.

79. The COUNTY, and their agents, including LUNA, turned a blind eye to this pattern and practice and/ or custom of personnel to take unauthorized photographs at death scenes. The fact that a top-ranking official such as GIANDOMENICO felt impervious to overtly taking the unauthorized photographs at a highly publicized event, signifies the indifference by the COUNTY, and their agents, including LUNA, toward constitutional rights.

80. LUNA failed to ensure adequate supervision at the scene of WILLIAM OSBORN's death investigation as evidenced by his high-ranking official openly taking photographs of the deceased.

81. The COUNTY, and their agents, including LUNA, authorized, ratified, and/ or otherwise allowed these obvious deficiencies and unlawful practices and procedures to take place and as part of a long-standing customary practice of COUNTY.

82. The unwritten custom and practice of taking such photographs and committing such an obvious constitutional violation demonstrates, at a minimum, deliberate indifference to protecting civil rights.

83. Sheriff LUNA, acting in his official capacity, and whose edicts and acts may fairly be said to represent official policy, failed to prevent the harm Plaintiffs have and will continue to suffer by allowing his executive to take and distribute photos that posed a high probability of causing harm.

84. The inability to take reasonable steps to refrain from and prevent personnel from engaging in the very conduct for which they were previously sued created a harm that cannot be undone.

85. Such actions and omissions by the COUNTY, and their agents, including LUNA, proximately caused the violation of Plaintiffs' right to privacy and family integrity, which flow from substantive due process rights guaranteed under the Fourteenth Amendment to the United States Constitution. That is, the COUNTY, and their agents', including LUNA, deliberate indifference to the ineffectiveness of their policies, procedures, practices, customs, and/or failure to train played a substantial part in bringing about the taking and distributing of photographs of WILLIAM OSBORN.

86. The foregoing unconstitutional customs and practices were a direct and proximate result of the COUNTY, and LUNA's failure to train, supervise, investigate, or discipline its employees regarding unauthorized death images, as well as COUNTY's pattern of practice and/ or custom of unnecessarily taking and sharing death images.

87. The repugnant nature of these actions is so shocking to the conscience, offensive to the community's sense of decency, and wholly inconsistent with constitutional rights that it would, by itself, trigger liability. That the COUNTY, and LUNA's failed to implement meaningful changes after previously being put on notice by the *Bryant* lawsuit and consequent legislative action further amplifies their culpability.

88. As the direct and proximate result of the COUNTY, and LUNA's deliberate indifference to, and failure to end, the long-standing custom of personnel taking unauthorized photographs at death scenes, as well as the failure to provide adequate training, supervisory, and disciplinary measures, and the Department's long-standing custom of unnecessarily taking such photographs, Plaintiffs have suffered, and continue to suffer, serious and severe emotional distress in an amount to be proven at trial.

//

//

//

## VIII.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

**By Plaintiffs Against All Defendants**

89. Plaintiffs herein allege and incorporate, as though fully set forth at length, each and every allegation and statement contained hereinabove.

90. California law recognizes the duty to handle bodies with due care because such conduct is "likely to cause serious emotional distress to members of the decedent's immediate family regardless of whether they observe the actual negligent conduct or injury or the remains of their decedent." *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 894–895.

91. California further imposes on law enforcement officers the duty to "refrain from exploiting gruesome death images by disseminating them to friends and family members of others with no involvement in official activities." *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 884.

92. The COUNTY, LUNA, and GIANDOMENICO knew, or should have known, of the general legal requirements when responding to death investigations, as well as the particular issue of law enforcement taking unofficial and unauthorized photographs at death investigations. The temptation to photograph crime and accident scenes by law enforcement officials is generally predictable and foreseeable.

93. By virtue of the COUNTY, LUNA, and GIANDOMENICO routinely undertaking the care, custody, and control of human remains at crime and accident scenes, and having done so with respect to WILLIAM OSBORN's remains on July 18, 2025, and thereafter, they owed Plaintiffs a duty to exercise ordinary care in the treatment of WILLIAM OSBORN's remains.

94. GIANDOMENICO owed Plaintiffs a duty to use ordinary care in his treatment of WILLIAM OSBORN’s physical remains, including an obligation to refrain from taking or sharing images of him for personal, non-law-enforcement purposes. Cal. Civ.

Code § 1714; Pen. Code § 647.9. GIANDOMENICO breached his duty by taking, sharing, and/or distributing photos of WILLIAM OSBORN's remains for non-law-enforcement purposes.

95. GIANDOMENICO's violation of Penal Code section 647.9 constitutes negligence per se under California Evidence Code section 669 because: (a) he violated a statute; (b) the violation proximately caused Plaintiffs' injuries; (c) Plaintiffs' emotional distress, invasion of privacy, and harm arising from the unauthorized taking and circulation of images depicting Decedent's remains were injuries of the nature the statute was designed to prevent; and (d) Plaintiffs, as Decedent's surviving family members, were among the class of persons the statute was intended to protect.

96. LUNA owed Plaintiffs a duty to use ordinary care in preventing dissemination of any unnecessary images of William Osborn's remains once the images were created and/or were within his control. Cal. Civ. Code § 1714. LUNA breached his duty by: (a) failing to train personnel that unauthorized photos at crime and accident scenes shall not be taken; (b) failing to adequately supervise crime and accident scenes; and (c) failing to take possession of the cell phone containing these photos in order to prevent the dissemination of these unauthorized images.

97. Pursuant to Government Code section 820(a), these executives are liable for injuries caused by their acts or omissions to the same extent as private persons. Government Code section 815.2(a) provides that a public entity is liable for injury proximately caused by an act or omission of an employee within the scope of employment; apart from section 815.2(a), Civil Code section 1714 gives rise to the action against the employer.

98. On information and belief, the executives were under the direction and control of the COUNTY when they engaged in the conduct described above. GIANDOMENICO was able to take photographs of WILLIAM OSBORN's physical remains by virtue of his access to the investigation site while on duty. LUNA had the responsibility to oversee the investigation and the authority to train and discipline subordinates, particularly related to

unauthorized photographs at death scenes, and failed to seize GIANDOMENICO's cell phone after learning it had been used to take the unauthorized photos. These negligent acts and omissions make the COUNTY liable for this wrongful conduct and the derivative harm it caused Plaintiffs.

99. The COUNTY, LUNA, and GIANDOMENICO foresaw or should have foreseen that the conduct would harm Plaintiffs. As a direct and proximate result of their failure to exercise ordinary care, Plaintiffs have suffered, and continue to suffer, serious and severe emotional distress in an amount to be proven at trial. The COUNTY, LUNA, and GIANDOMENICO are jointly and severally liable for that emotional distress. GIANDOMENICO is subject to punitive or exemplary damages under Civil Code section 3294 as his acts meet the meaning of fraud, malice, and/or oppression.

## IX.

## FOURTH CAUSE OF ACTION

## INVASION OF PRIVACY

**By Plaintiffs Against Defendant GIANDOMENICO**

100. Plaintiffs herein allege and incorporate, as though fully set forth at length, each and every allegation and statement contained hereinabove.

101. Surviving family members have a common-law privacy right in the death images of a decedent. *Catsouras v. Department of California Highway Patrol*, *supra*, 181 Cal.App.4th at pp. 863–864. Plaintiffs have a privacy interest in the physical remains, memory, and death images of their loved one, WILLIAM OSBORN.

102. GIANDOMENICO took, and disclosed, photos of WILLIAM OSBORN's remains without any law-enforcement or other legitimate public purpose. Such conduct is offensive and objectionable to a reasonable person of ordinary sensibilities and constituted a serious invasion of Plaintiffs' protected privacy interests.

103. Pursuant to Government Code section 820(a), GIANDOMENICO is liable for injuries caused by his acts or omissions to the same extent as a private person.

104. As a direct and proximate result of LUNA and GIANDOMENICO's conduct,

Plaintiffs have suffered, and continue to suffer, serious and severe emotional distress in an amount to be proven at trial. LUNA and GIANDOMENICO are jointly and severally liable for that emotional distress. GIANDOMENICO is further subject to punitive or exemplary damages under Civil Code section 3294 as his acts meet the meaning of fraud, malice, and/or oppression.

**X.**

**FIFTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**By Plaintiffs Against Defendants GIANDOMENICO**

105. Plaintiffs herein allege and incorporate, as though fully set forth at length, each and every allegation and statement contained hereinabove.

106. The taking and sharing of unauthorized photographs of WILLIAM OSBORN's remains constitutes extreme and outrageous conduct exceeding all bounds of what is usually tolerated in a civilized community.

107. GIANDOMENICO took and/or shared these photographs of WILLIAM OSBORN's physical remains without any official or law-enforcement purpose, with the knowledge that WILLIAM OSBORN had surviving family members. He then disclosed the photos with the intention of causing, or with reckless disregard of the probability of causing, emotional distress to the family members of WILLIAM OSBORN, including Plaintiffs.

108. As a direct and proximate result of this conduct, Plaintiffs have suffered and continue to suffer serious and severe emotional distress in an amount to be proven at trial. GIANDOMENICO is further subject to punitive or exemplary damages under Civil Code section 3294 as his acts meet the meaning of fraud, malice, and/or oppression, entitling Plaintiffs to punitive or exemplary damages in an amount appropriate to punish Defendant GIANDOMENICO and to make an example of him to the community.

//

//

## XI.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray and demand the following relief, jointly and severally, against all of the Defendants pursuant to each cause of action and claim for relief:

a. Compensatory general, economic, non-economic, and special damages in an amount in accordance with proof;

b. For punitive damages against individual defendants.

c. Costs of suit necessarily incurred herein; and

d. Such further relief as the Court deems just or proper.

Dated: September 30, 2026

**CARRILLO LAW FIRM, LLP**

LUIS A. CARRILLO, Esq.
MICHAEL S. CARRILLO, Esq.
MARIA F. GARCIA BALDIZZONE, Esq.
*Attorneys for Plaintiffs*

## VIII.

## DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiffs, by and through their attorneys of record, request that the present matter be set for jury trial.

Dated: September 30, 2026

**CARRILLO LAW FIRM, LLP**

LUIS A. CARRILLO, Esq.
MICHAEL S. CARRILLO, Esq.
MARIA F. GARCIA BALDIZZONE, Esq.
*Attorneys for Plaintiffs*